**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

| | |
|---|---|
| In re: | |
| | Case No. 4:22-bk-40087-KKS |
| BLACK NEWS CHANNEL, LLC,[1] | |
| Debtor. | Chapter 11 |

**DEBTOR'S <u>EMERGENCY</u> MOTION TO FURTHER AMEND BIDDING
PROCEDURES ORDER TO (I) AUTHORIZE AND APPROVE DEBTOR'S
DESIGNATION OF ENTERTAINMENT STUDIOS NETWORKS, INC. AS
STALKING HORSE BIDDER AND ITS BID AS THE STALKING HORSE BID, (II)
APPROVE BREAK-UP FEE AND EXPENSE REIMBURSEMENT FOR
STALKING HORSE BIDDER CONSISTENT WITH PRE-APPROVED STALKING
HORSE INDUCEMENTS, (III) FURTHER EXTEND BID DEADLINE, AND (IV)
MODIFY CERTAIN OTHER TERMS FOR THE SALE PROCESS
<u>(RE ECF NOS. 175 and 281)</u>**

Debtor, Black News Channel, LLC ("<u>BNC</u>" or "<u>Debtor</u>"), by and through its undersigned

counsel, makes this motion (the "<u>Motion</u>"), pursuant to sections 105(a) and 363 of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>"), Rules 6004 and 9006 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Rules 6004-1(C) and 9006-1(A) of the Local

Rules for the United States Bankruptcy Court for the Northern District of Florida (the "<u>Local</u>

<u>Bankruptcy Rules</u>"), for entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>**

(the "<u>Proposed Order</u>"), further amending the Bidding Procedures Order and the Bidding

Procedures (each as defined herein) to (a) authorize and approve Debtor's designation of

Entertainment Studios Networks, Inc. ("<u>ESN</u>") as the Stalking Horse Bidder and ESN's bid, as

set forth in the Asset Purchase Agreement, dated June 24, 2022, by and between the Debtor, as

seller, and ESN, as Purchaser, attached hereto as **<u>Exhibit B</u>** (together with all exhibits and

---

[1]     The Debtor's address is 2320 Killearn Center Blvd., Building D, Tallahassee, Florida 32309.  The last four
digits of the Debtor's federal tax identification number are 5082.

schedules thereto, the "Stalking Horse APA"),[2] as the Stalking Horse Bid (as defined in the Bidding Procedures), (b) approving the Break-Up Fee and Expense Reimbursement (as defined in the Stalking Horse APA), on terms and conditions consistent with the Pre-Approved Stalking Horse Inducements, for ESN as the Stalking Horse Bidder, (c) extending the Bid Deadline from July 1, 2022, at 5:00 p.m. (prevailing Eastern Time), to July 8, 2022, at 5:00 p.m. (prevailing Eastern Time), and (d) modifying certain other terms of the ongoing process for the marketing and sale of the Debtor's assets and business (the "Sale Process"), as described more fully herein and in the Proposed Order.[3]   In support of this Motion, the Debtor respectfully states as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference from the United States District Court for the Northern District of Florida, dated June 5, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 6004 and 9006, and Local Bankruptcy Rules 6004-1 and 9006-1.

---

[2]      The Stalking Horse APA has been filed without its Schedules, which the Debtor and ESN are in the process of finalizing and as to which the Debtor and ESN reserve all rights.  The Debtor and ESN anticipate that the Schedules to the Stalking Horse APA will be finalized prior to the hearing on this Motion.

**Background**

5.      On March 28, 2022 (the "Petition Date"), the Debtor filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On April 12, 2022, the United States Trustee for Region 21 (the "U.S. Trustee") appointed (ECF No. 90) an Official Committee of Unsecured Creditors (the "Committee"), initially consisting of two members.  On April 20, 2022, the U.S. Trustee issued an amended notice (ECF No. 131) appointing three additional members of the Committee.  No trustee or examiner has been appointed or requested in this chapter 11 case.

7.      On April 26, 2022, the Debtor filed the *Debtor's Emergency Motion for (A) Approval of Bidding Procedures, (B) Authorization for Debtor to Designate Stalking Horse Bidder and Grant Certain Stalking Horse Inducements, (C) Scheduling Auction, Sale Hearing and Related Dates, (D) Approval of the Form and Manner of Notice Thereof, (E) Establishment of Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (F) Approval of the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and (G) Related Relief* (ECF No. 151) (the "Sale Motion").

8.      On May 3, 2022, this Court entered the *Order Granting, In Part, Debtor's Emergency Motion for (A) Approval of Bidding Procedures, (B) Authorization for Debtor to Designate Stalking Horse Bidder and Grant Certain Stalking Horse Inducements, (C) Scheduling Auction, Sale Hearing and Related Dates, (D) Approval of the Form and Manner of Notice*

---

3       Capitalized terms used but not otherwise defined herein shall have the meanings given in the Bidding Procedures Order or, if not defined therein, the Bidding Procedures.

3

*Thereof, (E) Establishment of Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (F) Related Relief (ECF No. 151)* (ECF No. 175) (as originally entered on May 3, 2022, the "Initial Bidding Procedures Order"), pursuant to which this Court approved the bidding procedures attached thereto as Exhibit 1 (as initially approved by the Initial Bidding Procedures Order, the "Initial Bidding Procedures").

9.      Pursuant to the Initial Bidding Procedures Order and the Bidding Procedures, the Debtor was authorized to, among other things, designate a Stalking Horse Bidder, enter into a Stalking Horse Agreement with a Stalking Horse Bidder, and offer certain Pre-Approved Stalking Horse Inducements to induce any such Stalking Horse Bidder to enter into a Stalking Horse Agreement, all in consultation with the Consultation Parties (as defined in the Bidding Procedures).  *See* Initial Bidding Procedures Order ¶¶ 20-24.  In addition to other relief granted thereby, the Initial Bidding Procedures Order established May 27, 2022 (the "Initial Stalking Horse Designation Deadline"), as the initial deadline for the Debtor to file a notice of its designation of a Stalking Horse Bidder, if any.

10.      Both before and since the Court's entry of the Initial Bidding Procedures Order, the Debtor and its advisors have diligently pursued the marketing of the Debtor's assets and business. The efforts to date of the Debtor and its advisors in connection with the Sale Process have been exhaustive and include:

- Ankura Consulting Advisors, LLC ("Ankura"), the Debtor's Court-approved investment banker for the Sale Process, having contacted at least 160 potential strategic and financial investors regarding the opportunity to purchase the Debtor's assets and business (collectively, "Potential Bidders");

- The Debtor's execution of 25 NDAs with Potential Bidders, 24 of which have obtained due diligence access through the Debtors virtual data room (the "VDR") ; and

- Expressions of interest in bidding by a significant subset of those parties with VDR access.

11. Two of the Potential Bidders that have been particularly active since the early stages of the Sale Process are Ebony Studios, LLC ("Ebony Studios") and ESN, which does business under the name Allen Media Group. Indeed, when, in furtherance of identifying suitable Stalking Horse Bidder candidates as contemplated by the Initial Bidding Procedures Order, the Debtor requested that interested Potential Bidders submit preliminary non-binding indications of interest ("IOIs"), both Ebony Studios and ESN were among those parties who submitted IOIs. After due consideration of the IOIs received and further discussions with the Potential Bidders that submitted IOIs, the Debtor identified Ebony Studios as a candidate to be designated as a Stalking Horse Bidder and the bid contemplated by its IOI as the proposal received by the Debtor that appeared most likely to result in a viable Stalking Horse Bid.

12. To proceed with negotiation and documentation of a potential Stalking Horse APA, Ebony Studios required a commitment by the Debtor to an approximately one week period of limited exclusivity. The Debtor also determined that more time would be required to potentially execute a Stalking Horse APA than was then permitted under the Initial Bidding Procedures Order for the Debtor to designated a Stalking Horse Bidder and grant the Pre-Approved Stalking Horse Inducements without further order of the Court. Accordingly, the Debtor and Ebony studios entered into that certain letter agreement, dated May 25, 2022 (the "Limited Exclusivity Agreement"), and on May 26, 2022, the Debtor filed an emergency motion (ECF No. 241) to approve the Limited Exclusivity Agreement and to extend the Debtor's deadline to designated a Stalking Horse Bidder and grant the Pre-Approved Stalking Horse Inducements through June 3, 2022. By order, entered May 31, 2022 (ECF No. 253) (the "Ebony SH Order"), the Court granted the foregoing motion.

13.     The Debtor and its advisors negotiated in good faith with Ebony Studios regarding its potential designation as a Stalking Horse Bidder, but were ultimately unable to finalize an acceptable Stalking Horse Agreement with Ebony Studios by the Stalking Horse Designation Deadline.  Although the limited exclusivity period with Ebony Studios was allowed to expire on June 3, 2022, the Debtor and Ebony Studios continued work on a potential Stalking Horse APA for several days thereafter.

14.     When it finally became clear that the Debtor and Ebony Studios were not likely to finalize terms of a Stalking Horse APA with the timeframe available, the Debtor, in consultation with counsel for the Committee and Stache Investments Corporation ("Stache"), the Debtor's DIP Lender (and now Prepetition Lender), determined that to maximize the likelihood of a successful outcome for the Sale Process, the Debtor should extend the Bid Deadline and certain other aspects of the Sale Process schedule by approximately two weeks.  As a result, by its motion dated June 7, 2022 (ECF No. 276), the Debtor requested and, by order dated June 14, 2022 (ECF No. 281) (the "Bidding Procedures Extension Order"), the Court granted, an extension of the Bid Deadline, rescheduled the Sale Hearing, and modified certain other deadlines in the Initial Bidding Procedures Order (as amended by the Ebony SH Order and the Bidding Procedures Extension Order, the "Bidding Procedures Order") and the Initial Bidding Procedures (as amended by the Ebony SH Order and the Bidding Procedures Extension Order, the "Bidding Procedures").

15.     The Sale Process schedule as modified through entry of the Bidding Procedures Extension Order included: (a) an extension of the Bid Deadline through July 1, 2022; (b) a potential Auction date of July 7, 2022; and (c) a Sale Hearing on July 19, 2022, at 10:00 a.m. (prevailing Eastern Time).

16.    The Debtor and its advisors have availed themselves of the additional time in the Sale Process schedule to redouble their efforts both with existing Potential Bidders and to bring additional Potential Bidders into the Sale Process, with some measure of success.  In addition, the Debtor and its advisors have continued active discussions and negotiations with Ebony Studios and with ESN, both in furtherance of obtaining by the Bid Deadline viable Qualified Bids from those parties and in further consideration of the possibility that one of those Potential Bidders might help the Debtor advance the Sale Process by serving as a Stalking Horse Bidder.

17.    After further discussions with both Ebony Studios and ESN, ESN emerged as the leading candidate to serve as a Stalking Horse Bidder.  As described more fully below, ESN has proposed a sale transaction to acquire substantially all of the Debtor's assets (subject to limited exceptions) on terms that, at present, comprise what the Debtor believes to be the highest and best offer available for its assets and business.

### The Stalking Horse Bid

18.    Securing this Stalking Horse Bid represents a critical development for the Debtor and the Sale Process, as the Stalking Horse Bid not only guarantees a sale that captures significant value for the Debtor's estate, but sets the floor for competitive bidding at the Auction. An accurate summary of the material terms of the Stalking Horse Bid, which are memorialized in the Stalking Horse APA, is set forth in the table below.

| Stalking Horse APA Summary[4] | |
|---|---|
| **Purchase Price**<br>**[APA § 2.4]** | $11,000,000 |
| **Purchased Assets**<br>**[APA § 2.1]** | Substantially all of the Debtor's assets, used or held for use in or otherwise related to, useful in or necessary for the conduct of, the Business, other than the Excluded Assets. |

---

[4]    This summary of the Stalking Horse APA is qualified in its entirety by reference to the Stalking Horse APA itself, which shall control in the event of any conflict.

| | |
|---|---|
| **Excluded Assets**<br><br>**[APA § 2.2]** | Excluded Assets include:<br><br>• Seller's organizational documents;<br><br>• any Contract that is not an Assumed Contract;<br><br>• all rights of Seller arising under the Stalking Horse APA;<br><br>• any membership interests or other equity interests in Seller;<br><br>• all assets listed on Schedule 2.2(e) by Purchaser in its sole discretion as of two (2) Business Days before the Closing Date, if any;<br><br>• all attorney-client privilege and attorney work-product protection of Seller or associated with the Business as a result of legal counsel representing Seller or the Business to the extent relating to the structuring, preparation and negotiation of the transactions contemplated by the Agreement, as well as documents related thereto; and all attorney-client privilege and attorney work-product, and documents subject to such privilege, with respect to an investigation into any claims or causes of action relating to or predominantly arising out of an Excluded Asset or Excluded Liability;<br><br>• all good faith or other bid deposits submitted by a third party under the terms of the Bidding Procedures;<br><br>• all past, present, and future claims, asserted or unasserted, contingent or fixed, known or unknown, against third parties predominantly relating to or predominantly arising out of an Excluded Asset or Excluded Liability;<br><br>• all warranties and guarantees predominantly related to any Excluded Asset;<br><br>• all rights of Seller under nondisclosure or confidentiality, non-compete or non-solicitation agreements predominantly relating to an Excluded Asset or Excluded Liability;<br><br>• all Tax assets (including refunds and credits), including those attributable to the equityholders of Seller;<br><br>• all of Seller's director and officer insurance policies, fiduciary policies or employment practices policies (in each case of the foregoing, including any tail policies or coverage thereon), and any of such Seller's rights, claims, demands, proceedings, credits, causes of action or rights of set off thereunder;<br><br>• any refund, prepayment, or credit predominantly attributable to an Excluded Asset or Excluded Liability;<br><br>• all utility deposits, security deposits, deposits held by vendors or trade creditors, and other deposits of any kind or nature whatsoever, if any, attributable to an Excluded Asset or Excluded Liability;<br><br>• all prepaid expenses of Seller attributable to an Excluded Asset or Excluded Liability;<br><br>• all of Seller's right, title and interest in any reserves held by any bank, |

| | |
|---|---|
| | insurance company, or credit card processor; |
| | • all claims or causes of action that either are Excluded Assets or to the extent relating to any Excluded Asset or Excluded Liability (including, for the avoidance of doubt, all Avoidance Actions relating to an Excluded Asset or Excluded Liability); |
| | • all rights, claims and causes of action (whenever arising) against any officers, directors, managers, membership or other equity interest holders (in each case, whether current or prior) of Seller (except any rights, claims and causes of actions (whenever arising) against any Transferred Employees); |
| | • Intellectual Property and Intellectual Property Rights that are not owned by Seller; |
| | • Any media based assets owned in whole or in part by Yaasmyn Fula; and |
| | • any properties and assets set forth on Schedule 2.2(u), as Schedule 2.2(u) may be supplemented, modified and amended by Purchaser. |
| **Assumed Liabilities**<br><br>[APA § 2.3(a)] | • All liabilities and obligations of Seller exclusively relating to or arising out of Purchaser's ownership of the Purchased Assets from and after the Closing Date;<br><br>• All liabilities of Seller under each of the Assumed Contracts that become due from and after the Closing Date; and<br><br>• All Cure Costs required in connection with the assumption and assignment of any Assumed Contracts. |
| **Excluded Liabilities**<br><br>[APA § 2.3(b)] | All Liabilities of Seller other than the Assumed Liabilities. |
| **Assumption / Assignment of Contracts / Leases**<br><br>[APA § 2.5] | All Assumed Contracts designated by Purchaser on Schedule 2.1(m), as Schedule 2.1(m) may be further modified in accordance with the Stalking Horse APA. |
| **Termination**<br><br>[APA §§ 8.1 & 8.2] | Grounds for Termination of the Stalking Horse APA are as follows:<br><br>• by mutual written agreement of Seller and Purchaser;<br><br>• by Purchaser if the Bankruptcy Case is converted to a Chapter 7 case;<br><br>• by Seller or Purchaser, if the Closing shall not have been consummated on or before August 1, 2022, subject to Seller's right to extend once for up to fourteen (14) calendar days;<br><br>• by Purchaser, in the event that Seller accepts a Successful Bid from another bidder and Purchaser is not designated as the Backup Bidder;<br><br>• by Purchaser, in the event of certain uncured Seller breaches or Seller's inability to satisfy Purchaser's conditions to closing, all as described in APA §§ 8.1(e) & (j); |

| | |
|---|---|
| | • by Seller or Purchaser, if there shall be any Law that makes consummation of the Transactions illegal or otherwise prohibited, or if any Order permanently restraining, prohibiting, or enjoining Purchaser or Seller from consummating the Transactions is entered and such Order shall become final;<br><br>• by Seller, in the event of certain uncured Purchaser breaches or Purchaser's inability to satisfy Seller's conditions to closing, all as described in APA §§ 8.1(g) & (i);<br><br>• automatically in the event that Seller consummates an Alternative Transaction; and<br><br>• By Seller, if the Escrow Agent has not received the Good Faith Deposit within four (4) Business Days after the Parties' mutual execution of the Agreement. |
| **Bid Protections**<br><br>[APA §§ 1.2 & 5.3(e)(iii)] | Upon the closing of an Alternative Transaction, the Stalking Horse Bidder will be entitled to the following payable from the proceeds of such Alternative Transaction: (a) a Break-Up Fee of $330,000; and (b) an Expense Reimbursement of up to $220,000 on account of the actual and documented reasonable fees, costs and expenses incurred by Purchaser in connection with the Transactions.  The Break-Up Fee and Expense Reimbursement shall be an allowed administrative expense of the Debtor's estate until paid in full. |
| **Good Faith Deposit**<br><br>[APA §§ 2.4 & 8.2] | Within three (3) Business Days following the Parties mutual execution of the Agreement, Purchaser is required to fund a Good Faith Deposit in the amount of $1,100,000 to be held in escrow in accordance with the Agreement and the Bidding Procedures Order by an Escrow Agent acceptable to the Parties. |

## Relief Requested

19.    The Debtor respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (a) authorize and approve Debtor's designation of ESN as the Stalking Horse Bidder and ESN's bid, as set forth in the Stalking Horse APA, as the Stalking Horse Bid (as defined in the Bidding Procedures), (b) approving the Break-Up Fee and Expense Reimbursement, on terms and conditions consistent with the Pre-Approved Stalking Horse Inducements, for ESN as the Stalking Horse Bidder, (c) extending the Bid Deadline from July 1, 2022, at 5:00 p.m. (prevailing Eastern Time), to July 8, 2022, at 5:00 p.m. (prevailing Eastern Time), and (d) modifying certain other terms of the ongoing Sale Process, as described more fully herein and in the Proposed Order.

20.    As further modified by the Proposed Order, the schedule for the Sale Process will

be as follows (as modified, the "Further Revised Sale Schedule"):

| Event | Current Date | Revised Date |
|---|---|---|
| **Bid Deadline** | July 1, 2022, at 5:00 p.m. (prevailing Eastern Time) | July 8, 2022, at 5:00 p.m. (prevailing Eastern Time) |
| **Deadline for Debtor to Designate Qualified Bids and Baseline Bid** | Not later than 24 hours prior to the scheduled start of the Auction | July 11, 2022, at 12:00 p.m. (prevailing Eastern Time) |
| **Auction (If Necessary)** | July 7, 2022, at 10:00 a.m. (prevailing Eastern Time) | July 12, 2022, at 10:00 a.m. (prevailing Eastern Time) |
| **Deadline to File and Serve Notice of Successful Bidder** | As soon as reasonably practicable after conclusion of the Auction | As soon as reasonably practicable after conclusion of the Auction |
| **Post-Auction Objection Deadline** | July 11, 2022, at 5:00 p.m. (prevailing Eastern Time) | July 14, 2022, at 5:00 p.m. (prevailing Eastern Time) |
| **Deadline for Debtor to File and Serve Omnibus Sale Memorandum and Supporting Declarations, and for All Parties to File and Serve Witness and Exhibit Lists** | -- | July 18, 2022, at 12:00 p.m. (prevailing Eastern Time) |
| **Sale Hearing (subject to the Court's availability)** | July 19, 2022, at 10:00 a.m. (prevailing Eastern Time) | July 19, 2022, at 10:00 a.m. (prevailing Eastern Time) |
| **Sale Closing** | July 29, 2022 | July 29, 2022 |

21.    As set forth above, the Debtor also requests that the Court authorize the Debtor to

file on or before July 18, 2022 at 12:00 noon ET, an omnibus memorandum in further support of

Sale Motion and in reply to any objections that have been or may be filed to approval of the Sale

Transaction, assumption or assignment of any Assumed Contract, or the proposed Sale Approval

Order (the "Omnibus Sale Memorandum"), together with such supporting declarations that the

Debtor determines to be appropriate.  Similarly, the Debtor requests that July 18, 2022, at 12:00

noon ET, be fixed as the deadline all parties to file and serve any exhibit or witnesses lists required in connection with the Sale Hearing.

**Basis for Relief**

I. **The Court Should Authorize the Debtor to Designate ESN as a Stalking Horse Bidder, Execute the Stalking Horse APA, and Grant the Pre-Approved Stalking Horse Inducements, as a Sound Exercise of the Debtor's Business Judgment.**

22.    As detailed in the Sale Motion, the paramount goal in a sale under section 363 of the Bankruptcy Code is to maximize the value of the debtor's estate. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir 2004) (explaining that the debtor-in-possession has "a fiduciary duty to protect and maximize the estate's assets"); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (explaining that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"). "To accomplish that goal, bankruptcy courts are necessarily given discretion and latitude in conducting the sale." *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998). Indeed, a debtor's business judgment is entitled to deference with respect to the procedures to be used in selling an estate's assets. *See, e.g., In re 160 Royal Palm, LLC*, 600 B.R. 119, 127 (S.D. Fla.), *aff'd*, 785 F. App'x 829 (11th Cir. 2019) ("[T]he Debtor had broad discretion to determine the appropriate procedures for marketing and selling the bankruptcy estate's sole asset . . ."); *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002) ("The Trustee is responsible for the administration of the estate and his or her judgment on the sale and the procedure for the sale is entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met."); *In re Integrated Res., Inc.*, 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting bidding procedures negotiated by a trustee are to be reviewed according to deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

23.    To that end, the use of a stalking horse in an auction process is a customary practice in chapter 11 cases and serves to maximize value by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value."  *Off. Comm. of Unsecured Creditors v. Interforum Holding LLC*, 2011 WL 2671254, at *1 n.1 (E.D. Wis. July 7, 2011). Stalking horse bidders generally require break-up fees and other forms of bidding protections as an inducement for "setting the floor at auction, exposing its bid to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement."  *Id.* (citation omitted).  Indeed, break-up fees and other bidding protections are a normal and necessary component of bankruptcy sale processes.  *See Integrated Res.*, 147 B.R. at 659-60 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . In fact, because the directors of a corporation have a duty to encourage bidding, break-up fees can be necessary to discharge the directors' duties to maximize value."). Indeed, bid protections "may be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking."  *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (citation and quotations omitted); *see also Integrated Res.*, 147 B.R. at 660–61 (noting bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid").

24.    Accordingly, courts routinely approve the designation of stalking horse bidders to foster competitive bidding, and payment of bidding protections to such bidders where they provide a benefit to the estate.  *See, e.g.*, *In re Fla. First City Banks, Inc.*, No. 20-30037 (KKS) (Bankr. N.D. Fla. Feb. 24, 2020) (approving bid protections for stalking horse bidder); *In re Beach Cmty. Bancshares, Inc.*, No. 18-30334 (HAC) (Bankr. N.D. Fla. Apr. 17, 2018) (similar); *In re Premier Bank Holding Co.*, No. 12-40550 (KKS) (Bankr. N.D. Fla. Sept. 13, 2012)

(similar); *In re Mission Coal Co.,* LLC, No. 18-04177 (TOM11) (Bankr. N.D. Ala. Dec. 21, 2018) (finding debtors' entry into agreement with "Opening Bidder" would allow debtors "to solicit the highest or otherwise best bid for their assets through the Bidding Procedures"); *see also In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999) ("In other words, the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate.").

25.      For many of the same reasons articulated in the Sale Motion, this Court should authorize the Debtor to enter into the Stalking Horse APA with, and grant the Pre-Approved Stalking Horse Inducements to, ESN.  The Debtor, in consultation with its advisors, believes that its entry into the Stalking Horse APA is an essential component of its ability to maximize value in connection with the Sale Process.  As an initial matter, the Stalking Horse APA itself represents a value-maximizing transaction, a positive outcome for the Debtor and its stakeholders, and will ensure that the Debtor has a viable path forward in the event that additional, superior Qualified Bids are not forthcoming by the Bid Deadline.  But the Stalking Horse APA will also benefit the Debtor's estate by establishing a floor for further bidding that may ultimately increase the consideration obtained for the Debtor's assets, resulting in further benefit to the Debtor and its estate.  Accordingly, the Debtors' entry into the Stalking Horse APA is appropriate and warranted under the circumstances.

26.      Further, the Debtor's ability to offer the Pre-Approved Stalking Horse Inducements to ESN is essential to the Debtor's ability to secure this Stalking Horse APA and establish a foundation for a potential Auction.  The Pre-Approved Stalking Horse Inducements were the result of lengthy, arms' length negotiations between the Debtor and ESN, and ESN

ultimately insisted on the Pre-Approved Stalking Horse Inducements in exchange for serving as the Stalking Horse Bidder. Moreover, the Pre-Approved Stalking Horse Inducements are within the range that was previously authorized by the Court pursuant to the Bidding Procedures Order.

27.    While the Debtor was unable to come to terms on a Stalking Horse Agreement with a potential bidder, and designate a Stalking Horse Bidder, by the original Stalking Horse Designation Deadline, the Debtor respectfully submits that the Pre-Approved Stalking Horse Inducements serve the same purpose at this juncture. They are reasonable in scope, and are clearly designed to compensate ESN for the substantial time and effort it has devoted to conducting diligence on the Debtor's business and agreeing to serve as a floor for an eventual Auction if competing Qualified Bids are submitted by the Bid Deadline. Accordingly, the Pre-Approved Stalking Horse Inducements are fair and reasonable and are "reasonably related to the risk, effort, and expenses of" ESN. *Integrated Res.*, 147 B.R. at 662 (citation omitted).

28.    Further, if approved, the Pre-Approved Stalking Horse Inducements would necessarily only be paid if the Debtor, in fact, receives a higher or otherwise superior offer for its assets than that contemplated by the Stalking Horse APA. Accordingly, authorizing the Debtor to provide the Pre-Approved Stalking Horse Inducements to ESN will necessarily inure to the benefit of the Debtor's estate. Accordingly, the Pre-Approved Stalking Horse Inducements should be approved as a sound exercise of the Debtor's business judgment and are in the best interests of the Debtor, its estate, and all stakeholders in this chapter 11 case.

29.    Moreover, approving the Debtor's designation of ESN as the Stalking Horse Bidder at this juncture will result in no prejudice to any constituency in this chapter 11 case. The Stalking Horse APA is necessarily still subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures. By the proposed extended Bid Deadline (July 8, 2022),

15

most Potential Bidders will have had more two months to conduct due diligence on the Debtor's business and prepare bids pursuant to the Bidding Procedures. And in light of the Debtor's request to further extend the Bid Deadline and adopt the Further Revised Sale Schedule, as set forth below, the Debtor submits that all potentially interested parties will have had more than sufficient time to review the Stalking Horse APA and formulate any such higher or otherwise better offers in advance of the proposed new Bid Deadline of July 8, 2022. The Debtor will then seek ultimate approval of the sale to ESN or the otherwise Successful Bidder at the Sale Hearing.

30.     In sum, for many of the same reasons articulated by the Debtor in the Sale Motion, affording the Debtor the ability to designate ESN as a Stalking Horse Bidder and execute the Stalking Horse APA will ensure that the Debtor realizes a value-maximizing transaction for its assets by serving as a viable floor that will then be subjected to competing bids. As such, creditors of the Debtor's estate can be assured that the consideration obtained for the Debtor's business and assets will be fair and reasonable and at or above market, and also that a viable transaction will be realized if no other competing bids are received at the Bid Deadline.

**II.     Cause Exists to Further Extend the Bid Deadline and Amend the Revised Sale Schedule Set Forth in the Bidding Procedures Order and Bidding Procedures Amendment Order.**

31.     Section 105(a) of the Bankruptcy Code authorizes the Court to issue any order, process or judgment necessary or appropriate to carry out the provisions of the Bankruptcy Code. In addition, Bankruptcy Rule 9006(b) provides that "the court for cause shown" may extend certain time periods established by the Bankruptcy Rules or "by order of court," including deadlines such as those contemplated by the Revised Sale Schedule. Pursuant to Local Bankruptcy Rule 9006-1(A), "[a]ll time periods established in these Local Rules may be extended or shortened by the Court upon a showing of cause, unless otherwise prohibited by Bankruptcy Rule 9006(b)."

16

32.    Furthermore, the Bidding Procedures Order and the Bidding Procedures Amendment Order both provide that the Court retained exclusive jurisdiction with respect to all matters arising from or related to the implementation of those orders, which would include the inherent ability of the Court to modify the terms of its own order.  And finally, pursuant to Section XIV of the Bidding Procedures, the Debtor reserved the right to, among other things, extend the deadlines set forth in the Bidding Procedures in its reasonable business judgment and in consultation with the Consultation Parties.

33.    The Debtor respectfully submits that cause exists to further extend the Revised Sale Schedule set forth in the Bidding Procedures and Bidding Procedures Order, as modified by the Bidding Procedures Amendment Order, in accordance with the Further Revised Sale Schedule set forth above.  The Debtor and its advisors have spent the last several weeks engaging in robust discussions and negotiations with Ebony Studios, ESN, and other potentially interested parties, regarding their submission of bids for the Debtor's business and assets generally, and the Debtor's potential designation of a Stalking Horse Bidder.  Those hard-fought negotiations have led the Debtor to a positive point in this Chapter 11 Case: the Debtor now has a Stalking Horse APA in hand that represents a great outcome for the Debtor, its estate, and all of its stakeholders, and is optimistic that additional Qualified Bids will be forthcoming that may improve upon the terms of the Stalking Horse APA.  The Debtor submits that the additional time contemplated by the Further Revised Sale Schedule will only further improve the likelihood that superior Qualified Bids will be forthcoming, and ensure that the Debtor is able to realize the best possible value for its business and assets.  The Debtor, in a sound exercise of its business judgment, believes that extending the schedule for the Sale Process in accordance with the Further Revised Sale Schedule will give the Debtor the best opportunity to achieve that goal.

17

34.     The Debtor believes it already has authority to extend the deadlines set forth in the Revised Sale Schedule under the terms of the Bidding Procedures, but seeks this relief out of an abundance of caution.

35.     The additional time requested in this Motion will result in no prejudice to any party in interest.  Instead, it will only provide potentially interested parties additional time to evaluate the terms of the Stalking Horse APA, formulate viable bids for the Debtor's business, and hopefully result in a value-maximizing transaction for the benefit of the Debtor's estate and all of its stakeholders.

*[Remainder of Page Intentionally Blank]*

WHEREFORE, the Debtor requests entry of the Proposed Order granting the Motion and such other relief as is appropriate.

Dated: June 24, 2022

**THAMES | MARKEY**
Richard R.  Thames
Bradley R. Markey
Florida Bar Number 0718459
Florida Bar Number 0894213
50 North Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
(904) 358-4001 (Facsimile)
rrt@thamesmarkey.law
brm@thamesmarkey.law

-and-

**BENESCH,  FRIEDLANDER,  COPLAN  &  ARONOFF LLP**

 _/s/ Gregory W. Werkheiser_
Gregory W. Werkheiser (*pro hac vice*)
Steven L. Walsh (*pro hac vice*)
1313 N. Market Street, Suite 1201
Wilmington, DE 19801
Phone: (302) 442-7010
Fax: (302) 442-7012
gwerkheiser@beneschlaw.com
swalsh@beneschlaw.com

-and-

Scott A. McMillin (*pro hac vice*)
Matthew E. Nirider (*pro hac vice*)
71 S. Wacker Dr., Suite 1600
Chicago, IL 60606
Phone: (312) 212-4949
Fax: (312) 767-9192
smcmillin@beneschlaw.com
mnirider@beneschlaw.com

*Counsel for the Debtor*