**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

In re:

WIND DOWN TV, LLC,[1]

Debtor.

Case No. 4:22-bk-40087-KKS

Chapter 11

**DEBTOR'S <u>EMERGENCY</u> MOTION FOR APPROVAL OF STIPULATION**
**BETWEEN DEBTOR AND ENTERPRISE ENTITIES CONCERNING (I)**
**IMMEDIATE TERMINATION AND REJECTION OF MASTER EQUITY**
**LEASE AGREEMENT AND MAINTENANCE AGREEMENT, (II)**
**DISPOSITION OF LEASED VEHICLES AND PROCEEDS THEREOF,**
**<u>AND (III) RELATED MATTERS</u>**

Debtor Wind Down TV, LLC, f/k/a Black News Channel, LLC ("<u>BNC</u>" or the "<u>Debtor</u>"),

by and through its undersigned counsel, makes this motion (the "<u>Motion</u>"), pursuant to sections

105(a) and 365(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 6004,

6006 and 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for

entry of an order, substantially in the form attached hereto as **<u>Exhibit 1</u>** (the "<u>Proposed Order</u>" or

the "<u>Approval Order</u>"), (a) authorizing the Debtor's entry into and approving the *Stipulation*

*Between Debtor and Enterprise Entities Concerning (I) Immediate Termination and Rejection of*

*Master Equity Lease Agreement and Maintenance Agreement, (II) Disposition of Leased*

*Vehicles and Proceeds Thereof, and (III) Related Matters,* attached the Proposed Order as

<u>Exhibit A</u> (the "<u>Stipulation</u>"), (b) approving the Debtor's rejection of that certain *Master Equity*

*Lease Agreement,* dated January 8, 2021 (together with all Schedules thereto, each as amended

from time to time, the "<u>Master Lease</u>"), by and between the Debtor, as lessee, and Enterprise FM

---

[1]     The mailing address for Wind Down TV, LLC, f/k/a Black News Channel, LLC, is 1400 Village Square
Blvd., Suite #3 – 405, Tallahassee, FL 32312-1231. The last four digits of the Debtor's federal tax
identification number are 5082.

Trust ("Lessor"), and Enterprise Fleet Management, Inc., ("EFM," and together with Lessor, the "Enterprise Entities," and collectively with the Debtor, the "Parties"), in accordance with the terms of the Stipulation as of the Rejection Date (as defined herein), (c) approving the Debtor's rejection of that certain *Maintenance Agreement*, dated January 12, 2021 by and between the Debtor and EFM (as amended from time to time, the "Maintenance Agreement," and together with the Master Lease, the "Enterprise Agreements") in accordance with the terms of the Stipulation as of the Rejection Date (as defined below), and (d) granting related relief.[2] In support of this Motion, the Debtor respectfully states:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference from the United States District Court for the Northern District of Florida, dated June 5, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief sought herein are sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rules 6004, 6006 and 9019.

## Background

5.      On March 28, 2022 (the "Petition Date"), the Debtor filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its

---

[2]      Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Stipulation.

business as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    On April 12, 2022, the United States Trustee for Region 21 (the "U.S. Trustee") appointed (ECF No. 90) an Official Committee of Unsecured Creditors in this Chapter 11 Case (as reconstituted from time to time, the "Committee"), initially consisting of two members.  On April 20, 2022, the U.S. Trustee issued an amended notice (ECF No. 131) appointing three additional members of the Committee.

7.    No trustee or examiner has been appointed or requested in this chapter 11 case.

8.    Initially formed as a Florida limited liability company in 2004, BNC launched operations as the nation's first news channel dedicated to covering the unique perspectives, challenges and successes of Black and Brown communities in February 2020.

9.    Additional information concerning, among other things, BNC's finances and operations can be found in the *Declaration of Maureen Brown in Support of Chapter 11 Petition and First Day Relief* (ECF No. 60).

10.    On May 3, 2022, this Court entered the *Order Granting, In Part, Debtor's Emergency Motion for (A) Approval of Bidding Procedures, (B) Authorization for Debtor to Designate Stalking Horse Bidder and Grant Certain Stalking Horse Inducements, (C) Scheduling Auction, Sale Hearing and Related Dates, (D) Approval of the Form and Manner of Notice Thereof, (E) Establishment of Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (F) Related Relief (ECF No. 151)* (ECF No. 175), which the Court later amended by Orders entered on May 31, 2022 (ECF No. 253), June 14, 2022 (ECF No. 281), July 1, 2022 (ECF No. 326), and July 11, 2022 (ECF No. 343) (as amended, the "Bidding Procedures Order").

11.     Following an extensive postpetition sale process, the Court entered the *Order Granting Debtor's Emergency Motion for, Inter Alia, (I) the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Related Relief (Re ECF Nos. 151 & 175)* (ECF. No. 369) (the "Sale Order").  Pursuant to the Sale Order, the Court, *inter alia,* approved that certain Asset Purchase Agreement, dated June 24, 2022 (as amended, the "APA"), by and between, Entertainment Studios Networks, Inc., as Purchaser (together with its assignee under the APA, Greater Distribution, LL, the "Purchaser"), and the Debtor, as Seller, authorized the sale (the "Sale") pursuant to the APA of substantially all of the Debtor's assets (such assets, other than the Excluded Assets (as defined in the APA), the "Purchased Assets"), to the Purchaser, free and clear of all liens, claims, encumbrances and other interests, and authorized the Debtor to assume and assign to the Purchaser certain executory contracts and unexpired leases to be designated by the Purchaser pursuant to the terms of the APA, the Bidding Procedures Order, and the Sale Order (such contracts and leases, the "Assigned Contracts and Leases").

12.     The Sale closed on August 1, 2022.

13.     Prior to the closing of the Sale, the Purchaser informed the Debtor that the Enterprise Agreements were not among the Assigned Contracts and Leases and, thus, would be excluded from the Sale. The Purchaser and the Debtor also agreed that the Vehicles were Excluded Assets (as defined in the APA) and, thus, would not be part of the Sale.

### The Enterprise Agreements[3]

14.     The Debtor and Lessor entered into the Master Lease on January 8, 2021.

---

[3]     This summary of the Enterprise Agreements' terms is qualified in its entirety by the text of the Enterprise Agreements themselves, which shall control in the event of any conflict.

15.     Pursuant to the Master Lease, the Debtor leased the following vehicles from Lessor:

| Model Year | Make | Model | Vehicle Ident. No. |
|---|---|---|---|
| 2021 | Ford | Explorer | 1FMSK8DH1MGA79060 |
| 2021 | Ford | Explorer | 1FMSK8DH9MGA28048 |
| 2021 | Ford | Explorer | 1FMSK8DH0MGA54621 |
| 2021 | Ford | Explorer | 1FMSK7DHXMGA56886 |
| 2021 | Ford | Explorer | 1FMSK7DH7MGA51662 |
| 2021 | Ford | Explorer | 1FMSK7DH1MGA50636 |
| 2021 | Ford | Explorer | 1FMSK8DH1MGA90754 |
| 2021 | Ford | Explorer | 1FMSK7DH4MGA95666 |
| 2021 | Ford | Explorer | 1FMSK7DH9MGA94447 |
| 2021 | Ford | Explorer | 1FMSK7DH7MGB43256 |
| 2021 | Ford | Explorer | 1FMSK7DH3MGB15812 |

(each a "Vehicle," and collectively, the "Vehicles").

A.      Pursuant to the terms of the Master Lease, and subject to a formula set forth therein, the Debtor has a right to receive certain funds back from the Lessor following the Lessor's retrieval and sale of the leased Vehicles, subject to a number of variables, including, *inter alia*, the condition and mileage of each Vehicle and the actual sale price realized by the Lessor (the "Equity Payment").

16.     In connection with the Master Lease, the Debtor and EFM also entered into the Maintenance Agreement.

17.     As noted above, the Enterprise Agreements were excluded from the Sale. Because the Sale involved the sale of the Debtor's business and substantially all of the Debtor's assets, following the consummation of the Sale, the Debtor had no further need of the Enterprise Agreements or the Vehicles. The Debtor, thus, has determined in the exercise of its business judgment that the best interests of its estate and creditors are served by the prompt rejection of the Enterprise Agreements in accordance with the terms of the Stipulation.

18.    The following six Vehicles had been surrendered to Lessor prior to the Debtor's entry into the Stipulation (each a "Surrendered Vehicle" and collectively, the "Surrendered Vehicles"):

| Model Year | Make | Model | Vehicle Ident. No. |
|---|---|---|---|
| 2021 | Ford | Explorer | 1FMSK8DH1MGA79060 |
| 2021 | Ford | Explorer | 1FMSK8DH9MGA28048 |
| 2021 | Ford | Explorer | 1FMSK7DHXMGA56886 |
| 2021 | Ford | Explorer | 1FMSK8DH1MGA90754 |
| 2021 | Ford | Explorer | 1FMSK7DH4MGA95666 |
| 2021 | Ford | Explorer | 1FMSK7DH9MGA94447 |

### The Stipulation[4]

19.    The material terms of the Stipulation include the following:

- Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Master Lease shall be rejected by the Debtor and its estate, with such rejection effective as of September 2, 2022.

- The automatic stay imposed pursuant to section 362 of the Bankruptcy Code is modified and vacated retroactive to the Petition Date solely to the extent necessary (a) to allow Lessor to retake possession of any Vehicles not previously surrendered to Lessor (the "Remaining Vehicles") and to validate Lessor's prior recovery of position of the Surrendered Vehicles, (b) to allow Lessor to sell the Vehicles in a commercially reasonable manner and to validate Lessor's prior sales of the Surrendered Vehicles in a commercially reasonable manner, and (c) for Lessor to provide the Debtor with an accounting of the costs of Lessor's sale or other disposition of such Remaining Vehicles and the proceeds obtained from the sale or disposition of such Remaining Vehicles.  For the avoidance of doubt, the Debtor acknowledges and agrees that Lessor's acceptance of the surrender of the Surrendered Vehicles to Lessor, upon the entry and effectiveness of the Approval Order, will be ratified and approved retroactive to the date that such surrender occurred.

- Assuming it is a positive number, which the parties expect but it not assured until all of the Vehicles are sold, Lessor shall remit to Debtor the Equity Payment on account of each Vehicle previously or hereafter surrendered to Lessor as soon as practicable in accordance with the terms and conditions of the Master Lease and in any case within 30 days

---

[4]    The discussion of the terms of the Stipulation set forth in this Motion is qualified in its entirety by reference to the Stipulation, which shall control in the event of any conflict.

following the later of (x) the date entry of the Approval Order and (y) Lessor's sale or other disposition of the each of the Remaining Vehicles; *provided, however,* that Lessor may retain a holdback of $10,000 for delayed charges under the Master Lease (the "Holdback") for up to an additional 60 days, at which time any unpaid amount of the Holdback shall be remitted to the Debtor.  The Parties acknowledge and agree that the Lessor is holding $72,858.79 on account of the prior surrender of the Surrendered Vehicles to Lessor, which amount is subject to adjustment once Lessor sells the Remaining Vehicles.

- Subject to the Debtor's compliance in full with the terms of this Stipulation, and assuming the aggregate Equity Payment is a positive number (which the Parties expect), the Enterprise Parties waive any and all claims against the Debtor's estate arising out of or relating to the Enterprise Agreements.  Subject to Enterprise's compliance in full with the terms of this Stipulation, the Debtor waives any and all claims against Enterprise arising out of or relating to the Enterprise Agreements and any payments or transfers thereunder.

20.    The Stipulation is the product of good faith, arm's-length negotiations among the Debtor and the Enterprise Entities.  As set forth herein, approval of the Stipulation and the rejection of the Enterprise Agreements in accordance with the terms thereof is in the best interests of the Debtor, the Debtor's estate and its creditors.

## Basis for Relief

## I.    Approval of the Stipulation is in the Best Interests of the Debtor's Estate

21.    Bankruptcy Rule 9019(a) provides that on a motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. "The decision of a [t]rustee in Bankruptcy to enter a settlement is made within his or her business judgment. Compromises are generally approved if the Bankruptcy Court finds that they meet the business judgment of the trustee." *U.S. v. Hartog* 597 B.R. 673, 679 (S.D. Fla. 2019) (internal citations omitted). When considering compromises or settlements for approval, the bankruptcy court is to "determine whether the proposed settlement is fair and equitable." *In re Air Safety Int'l, L.C.,* 336 B.R. 843, 852 (S.D. Fla. 2005). Settlements or compromises should be approved unless they "fall below

the lowest point in the range of reasonableness." *In re Bicoastal Corp.,* 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993).

22.    In the Eleventh Circuit, the factors courts consider in determining whether to approve the settlement include: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and proper deference to their reasonable views in the premises. *In re Justice Oaks, II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir.) (establishing the legal standard for approval of settlements). In evaluating the settlement, the Court "need not rest its decision whether to approve a settlement upon a resolution of ultimate factual and legal issues which underlie the disputes that are proposed to be compromised … rather, the Court may, and should, make a pragmatic decision on the basis of all equitable factors." *In re Holywell Corp.,* 93 B.R. 291 (Bankr. S.D. Fla. 1988) (emphasis in original, citations omitted).

23.    The Stipulation is narrowly tailored to provide the Debtor and its estate with the cost-savings benefits of a prompt rejection of the Enterprise Agreements, effective as of the Execution Date, without further liability to the Debtor's estate so long as the Debtor performs in accordance with the terms of the Stipulation.  Further, the Stipulation memorializes the acknowledgement and agreement of the Enterprise Entities that the Debtor is entitled to receive any Equity Payment to which the Debtor would otherwise be entitled under the terms of the Master Lease, notwithstanding the Debtor's rejection of the Enterprise Agreements.  This Equity Payment, as indicated above, includes $72,858.79 that Lessor is holding as a result of the prior disposition of the Surrendered Vehicles.

24.     The Stipulation is the product of good faith, arm's-length negotiations among the Debtor and Enterprise Entities.

25.     For all of these reasons, the Debtor respectfully submits that the limited compromises contained in the Stipulation fall well above the lowest point in the "range of reasonableness," and thus satisfied the prevailing legal standard under Bankruptcy Rule 9019.

## II.     Rejection of the Enterprise Agreements Should be Authorized as a Sound Exercise of the Debtor's Business Judgment.

26.     Section 365 of the Bankruptcy Code permits a debtor to assume or reject an executory contract, subject to court approval.  11 U.S.C. § 365(a).  "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'"  *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993); *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization."); *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994) (section 365 "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed").

27.     In assessing a debtor's decision to reject an executory contract, bankruptcy courts apply the business judgment test.  *In re Surfside Resorts & Suites*, 325 B.R. 465, 469 (Bankr. M.D. Fla. 2005) (citing *In re Prime Motor Inns*, 124 B.R. 378, 381 (Bankr. M.D. Fla. 1991)); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that 'the question whether a lease should be rejected . . . is one of business judgment.'") (quoting *Grp. of Institutional Inv'rs v. Chi., Milwaukee, St. Paul & Pac. R.R. Co.*,

318 U.S. 523, 550 (1943)).  "The business judgment test requires a showing that rejection of the contract will likely benefit the [bankruptcy] estate."  *In re Colony Beach & Tennis Club Ass'n, Inc.*, 2010 WL 746708, at *3 (M.D. Fla. Mar. 2, 2010) (citing *In re H.M. Bowness, Inc.*, 89 B.R. 238, 241 (Bankr. M.D. Fla. 1988)); *see also N.L.R.B. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."), *aff'd*, 465 U.S. 513 (1984).  The bankruptcy court does not substitute its own judgment for that of the debtor; rather, courts approve the debtor's decision to reject unless that decision is the product of "bad faith, whim, or caprice."  *Surfside Resort*, 325 B.R. at 469 (quoting *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1047 (4th Cir. 1985)) (internal punctuation omitted); *In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422 (Bankr. N.D. Tex. 2009) (citing *Wheeling–Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling–Pittsburgh Steel Corp.)*, 72 B.R. 845, 849–50 (Bankr. W.D. Pa. 1987)).

28.     Rejection of the Enterprise Agreements is a sound exercise of the Debtor's business judgment.  As discussed above, the Enterprise Agreements were excluded from the Sale. Further, because the Sale involved the sale of the Debtor's business and substantially all of the Debtor's assets, following the consummation of the Sale, the Debtor has had no further need of the Master Lease, the Maintenance Agreement, or the Vehicles.  Accordingly, the Debtor's rejection of the Enterprise Agreements is supported by sound business judgment and is in the best interest of the Debtor's estate and creditors.

## Notice; Justification for Emergency Consideration

**29.     Prior to filing this Motion, the Debtor shared the Proposed Order and the Stipulation with the U.S. Trustee, counsel for the Committee, counsel for Stache**

**Investments Corporation, and counsel for Beatnik Investments, LLC. All of the foregoing parties have confirmed to the Debtor that they have no objection to the Court's approval of the Stipulation through entry of the Proposed Order without necessity of the hearing. In the event that the Court determines that a hearing on the Motion is necessary for any reason, each of the foregoing parties also has confirmed to the Debtor that they have no objection to the Court's expedited consideration of this Motion through a hearing to be convened within seven (7) calendar days after this Motion is filed.**

30.     The Debtor respectfully submits that the prompt approval of the Stipulation through the Court's entry of the Proposed Order is warranted due to the exigencies existing in the Debtor's bankruptcy case and, specifically, with respect to the subject matter of the Stipulation. Absent immediate approval of the Stipulation, the Debtor may continue to have risk of loss with respect to at least the Remaining Vehicles. Until such time as the Debtor is relieved of responsibility for the Remaining Vehicles, the Debtor will need to maintain insurance for them and thereby incur the resulting expenses for the Debtor's estate. Further, if Lessor and its affiliates are delayed in their ability to sell or otherwise dispose of the Vehicles, market for used vehicles, such as the Remaining Vehicles, could soften, thereby putting at risk the Debtor's ability to maximize the Equity Payment available to it.

31.     Conversely, no party in interest would be prejudiced by the prompt approval of the Stipulation and completion of the actions contemplated by the Stipulation. As noted above, most of the Debtor's significant economic and other stakeholders have confirmed that they have no objection to the Stipulation. Moreover, the Debtor is aware of no party, other than the Enterprise Entities, that conceivably could have an interest in any of the Vehicles or the Equity Payment.

WHEREFORE, Debtor respectfully requests entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit 1**, approving the Stipulation, authorizing the rejection of the Enterprise Agreements in accordance with the terms of the Stipulation, and granting related relief.

Dated: September 7, 2022

**THAMES | MARKEY**
Richard R.  Thames (Fl. Bar # 0718459)
Bradley R. Markey (Fl. Bar # 0894213)
50 North Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
rrt@thamesmarkey.law
brm@thamesmarkey.law

-and-

**BENESCH, FRIEDLANDER, COPLAN &
   ARONOFF LLP**

  */s/ Gregory W. Werkheiser*
Gregory W. Werkheiser (*pro hac vice*)
Juan E. Martinez (*pro hac vice*)
1313 N. Market Street, Suite 1201
Wilmington, DE 19801
Phone: (302) 442-7010
gwerkheiser@beneschlaw.com
jmartinez@beneschlaw.com

Scott A. McMillin (*pro hac vice*)
Matthew E. Nirider (*pro hac vice*)
71 S. Wacker Dr., Suite 1600
Chicago, IL 60606
Phone: (312) 212-4949
smcmillin@beneschlaw.com
mnirider@beneschlaw.com

*Counsel for the Debtor*